[No. 18116.    Department One.—October 13, 1893.]

## D. G. OVERALL, RESPONDENT, *v.* THE COUNTY OF TULARE, APPELLANT.

SHERIFF—MILEAGE—UNSUCCESSFUL SEARCH FOR CRIMINAL.—Under section 9 of the Act of March 5, 1870 (Statutes of 1869–70, p. 159), fixing the fees of the sheriff of Tulare county, that officer is not entitled to recover from the county mileage for the distance traveled in an unsuccessful search for persons charged with the commission of a crime, although the persons are subsequently found and arrested by him upon a second search.

ID.—ARRESTS FOR MISDEMEANOR WITHOUT WARRANTS.—Section 9 of the Act of 1870 does not entitle the sheriff to mileage for the distance traveled in going from the county-seat to other towns in which he has made several arrests for misdemeanor without warrants, when he went to the towns where the arrests were made without any knowledge of any crime having been committed by any of the persons arrested.

ID.—FEES OF SHERIFF.—The sheriff is entitled to such fees only as are allowed by law.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Bradley & Farnsworth,* for Appellant.

*Chas. G. Lamberson,* and *W. W. Middlecoff,* for Respondent.

· The COURT.—The plaintiff was sheriff of Tulare county from January 7, 1889, until January 5, 1891. During that time no salary was attached to his office,

but he was entitled to charge and receive for official services such fees as were allowed by law. On November 29, 1890, he presented to the board of supervisors for allowance a claim against the county for $770.40. Of this claim $284.70 was for "miles traveled hunting for" one McFarlane, and $485.30 for "miles traveled in hunting for" one McKinney, both of whom had been charged with the commission of crime. On January 12, 1891, the board allowed and ordered paid $201 on this claim.

On January 30, 1891, plaintiff presented to the board of supervisors for allowance another claim against the county for $690.50. This claim was for services in traveling to places away from the county-seat and arresting and bringing before justices of the peace a large number of alleged criminal offenders. On March 5, 1891, the board allowed and ordered paid $461.50 on this claim.

Plaintiff was not satisfied with the amounts so allowed and refused to accept the same, and thereupon he commenced this action to recover the full amount of his two claims, setting out a separate cause of action upon each claim. Attached to the complaint are copies of the claims presented to the board, duly itemized and marked respectively "Exhibit A" and "Exhibit B."

The gist of the first cause of action is stated in the complaint as follows:

"That between the twenty-sixth day of November, 1889, and the first day of February, 1890, the plaintiff as such sheriff necessarily traveled 2,568 miles within said state in executing warrants in criminal cases. And that thereby said defendant became and still is justly indebted to plaintiff in the sum of $770.40, no part of which has been paid."

And the gist of the second cause of action is thus stated:

"That between the tenth day of November, 1890, and the fifth day of January, 1891, defendant became and still is justly indebted to plaintiff for services performed

as such sheriff, for mileage necessarily traveled and for serving subpœnas and warrants in criminal cases to the amount of $689.50, no part of which has been paid."

The answer denied all the material averments of the complaint, and upon the issues thus raised the case was tried by the court without a jury. The court found that the plaintiff was entitled to recover the full amount claimed, less the sum of $27.60, which had been twice charged in "Exhibit B." Judgment was accordingly entered in favor of the plaintiff for the sum of $1,432.30 and costs of suit.

From this judgment and an order denying its motion for a new trial the defendant appeals.

The law fixing the traveling fees of the sheriff of Tulare county, during the time plaintiff held that office, is found in section 9 of the Act of March 5, 1870, Stats. of 1869–70, p. 159, and see Stats. of 1877–78, p. 559. The provision is as follows:

" For every mile necessarily traveled in going only, in executing any warrant of arrest, subpœna, or venire, bringing up a prisoner on *habeas corpus,* taking prisoners before a magistrate or to prison, or for mileage in any criminal case or proceeding; *provided,* that in serving a subpœna or venire, when two or more jurors or witnesses live in the same direction, but one mileage shall be charged, thirty cents."

And the County Government Act provides:

" The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named. . . . . *provided further,* that the board of supervisors shall allow to the sheriff his necessary expenses for pursuing criminals or transacting any criminal business without the boundaries of his county." (Stats. 1887, p. 207, sec. 211.)

In support of the first cause of action it was shown that McFarlane and McKinney were in the county jail, and escaped therefrom during the night of November 25 or 26, 1889. On the morning of the 27th plaintiff

started out hunting for them, having warrants for
their arrest, and continued such hunting until Decem-
ber 14th. While so engaged he traveled 940 miles, most
of which traveling was outside of his county. After
December 14th, plaintiff discontinued his hunting until
January 9, 1890, when he started out again in quest of
McKinney, and arrested him in Rawlins, Wyoming Ter-
ritory. In going and returning on this last trip he
traveled 670 miles within this state. Subsequently, in
December, 1890, plaintiff started out again after McFar-
lane, and found and arrested him in the town of San
Marcial, in New Mexico. For this last service he after-
wards presented another claim against the county, and
it was allowed and paid in full.

The 940 miles and 670 miles traveled as before stated,
the first number, however, being duplicated, because the
hunting was for two alleged criminals at the same time,
constitute the plaintiff's claim as set forth in his "Exhibit
A"; and the only question is, was he entitled to a larger
allowance on it than was made by the board of super-
visors?

Plaintiff testified: "During the time I did this travel-
ing, hunting for McKinney, from and including No-
vember 27, 1889, to December 14, 1889, I did not
arrest McKinney, or have him in my custody. These
places where I traveled in hunting were several hun-
dred miles from where I finally arrested McKinney.
Between the fourteenth day of December, 1889, and
January 9, 1890, I did not do any traveling in hunting
for McKinney. It was nearly a month after I did this
traveling in hunting for McKinney before I arrested
him, nearly a month before I started out again to hunt
him. . . . .

" I arrested McFarlane some time in December, 1890.
I arrested him several hundred miles from the place
where I did the hunting for him as set forth in my com-
plaint in 'Exhibit A.' . . . .

"I arrested both McFarlane and McKinney in opposite
directions from the places where I traveled in hunting

for them as set forth in my claim marked 'Exhibit A'; not exactly opposite, but in a different direction. The arrest of McFarlane by me was made nearly a year after the time I traveled hunting for him, as set out in my claim marked 'Exhibit A.'"

It will be observed that the plaintiff was allowed by the supervisors all that he was entitled to claim under the statute for the 670 miles traveled in making the arrest of McKinney, and also all that he claimed for making the arrest of McFarlane, and that only his claim for the miles traveled which did not result in any arrest was disallowed.

In *Broughton* v. *Santa Barbara Co.*, 65 Cal. 257, the sheriff of that county sought to recover, under section 9 of the Statute of 1869–70, above quoted, a certain sum of money as "mileage" for traveling to serve a warrant of arrest on one charged with felony; and it was held that the statute did not allow mileage for traveling in different directions in looking for one charged with a crime who is not arrested.

That case we consider directly in point and decisive of the first cause of action in this. It is true that McFarlane and McKinney were subsequently found and arrested, but that fact, under the circumstances shown, does not materially distinguish this case from that. It follows that the plaintiff was not entitled to recover for the miles traveled in his unsuccessful hunt, though possibly he might have rightly claimed pay for his necessary expenses. That question, however, does not arise here, as no such claim was presented for allowance.

In support of the second cause of action, it was shown that between November 10, 1889, and January 5, 1890, a deputy of the plaintiff went several times to Goshen and Tulare, and arrested at the former place eighteen and at the latter forty-nine different persons. The arrests were all made without any warrants, and it was admitted "that the plaintiff went to Goshen without any knowledge of any crime having been committed by any of the defendants in any of the said cases, and that

C. Cal.—5

while at Goshen he arrested each of said defendants and took each of said defendants to Visalia, where he swore to a complaint, before the justice, against each of said defendants, upon which a warrant was issued in each of said cases, which warrant was thereupon at said Visalia served by plaintiff upon each of said defendants." And there was a like admission as to the arrests made at Tulare. It was further admitted that each of the defendants named in the admissions was charged with a misdemeanor.

The deputy testified: "Some of these parties were arrested for vagrancy, some for malicious mischief, and I think there were two or three for disturbing the peace. . . . . At the time I arrested any of the defendants at Goshen I did not have any knowledge or notice that any particular defendant had committed any offense before I started from Visalia. In each and all of these cases the crime was committed at Goshen after I arrived there, and was done in my presence while there. I also state that each and all the defendants whom I arrested at Tulare were arrested by me for a crime committed in my presence at Tulare. I had no notice or knowledge of any of these defendants committing a crime before I started to Tulare."

The distance from Visalia to Goshen was eight miles and to Tulare twelve miles. In making up his claim, as shown by "Exhibit B," plaintiff charged, and now insists that he is entitled to recover, mileage at the rate of thirty cents per mile from Visalia to the place of arrest, for each of the eighteen and forty-nine persons arrested; and whether he was entitled to such mileage or not is the only question which need be considered, the allowance made by the board of supervisors being sufficient to cover all the balance of his claim.

As before stated the plaintiff was entitled to such fees only as were allowed by law. No statute or rule of law is cited authorizing such a charge as that in question, and we know of none. It seems clear, therefore, that this claim for mileage was properly disallowed by the

supervisors, and improperly allowed by the court below.

It follows that the judgment and order must be reversed, and the cause remanded.

So ordered.